IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GONZALES JOSEPH,<br><br>                    Petitioner,<br><br>          vs.<br><br>JEFFREY BEARD, Secretary, California<br>Department of Corrections and<br>Rehabilitation,[1]<br><br>                    Respondent. | No. 2:11-cv-00260-JKS<br><br>MEMORANDUM DECISION |

        John Gonzalez Joseph, a state prisoner represented by counsel, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  At the time he filed his Petition,

Joseph was in the custody of the California Department of Corrections and Rehabilitation and

incarcerated at California State Prison-Solano.  It appears that he has been released on

supervised parole, as a search on the California Department of Corrections and Rehabilitation's

inmate locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. K67634) has no record of

him.  Respondent has answered, and Joseph has replied.  As of June 22, 2012, the date his

counsel filed the Traverse, it appears that Joseph was still incarcerated at Solano.  He has not

filed a change of address with this Court.

## I. BACKGROUND/PRIOR PROCEEDINGS

        Upon direct appeal of his conviction, the California Court of Appeal summarized the

following facts underlying Joseph's conviction:

---

        [1]        Because it appears that Joseph has been released but is on post-release
supervision, Jeffrey Beard, Secretary, California Department of Corrections and Rehabilitation,
is substituted for Gary Swarthout, Warden, California State Prison-Solano.  FED. R. CIV. P.
25(c).

One evening near midnight at the Acapulco restaurant in Monrovia, Joseph and his brother, Robert, became embroiled in an argument with Gerald Brown (Gerald) and his cousin, John Brown.

The conversation was not what you would find in a Jane Austen novel.  Joseph angrily told Gerald, "Fuck this shit.  We don't have to take this from nobody, you know . . . .  What you want to do?"  Gerald replied, "I will treat you like you're my bitch and . . . I don't have a problem fighting you, you know.  Whatever is going to be is going to be."  James Holloway (Holloway), a friend of Gerald's, stepped in and separated Gerald and Joseph.  Acapulco's manager told them to leave and the assistant manager called the police.

Joseph waved a buck-type knife at Holloway in the parking lot.  Joseph threatened, "If you don't stop fucking with me, I'll kill you."  Joseph proclaimed he would "blow this whole place up."  Gerald tried to intervene, warning Holloway about the knife Joseph held.  Gerald and Holloway retreated, but Joseph raised his finger in the air and said "Fuck you" to the retreating men.

The men came back and a fight started.  Holloway ran towards the fight, tripped over a parking block and fell.  Joseph pounced on Holloway and repeatedly stabbed him in the chest.  Holloway died quickly.  Joseph's cousin, Doreen, told Joseph he needed to leave.  Joseph ran and hid, leaving a trail of blood.  Shortly thereafter, the police found Joseph coming out from some bushes with his hands raised.  Gerald identified him and the police took him into custody.

Joseph's hands were bleeding profusely.  Although the police could not find the knife, Joseph later admitted to Detective Perenishko that he stabbed Holloway with a folding knife.

The jury found Joseph guilty of second degree murder and that he personally used a deadly weapon.  The trial court denied his motion for new trial and sentenced him.

The Court of Appeal affirmed the judgment against Joseph in a reasoned opinion.

On April 5, 2010, Joseph, represented by counsel, filed a petition for a writ of habeas corpus in the Los Angeles County Superior Court challenging the September 30, 2009, decision of the Board of Parole Hearings ("Board") finding Joseph unsuitable for parole.  The superior court denied the petition, finding that the Board's decision denying Joseph parole was properly supported by evidence that his release would pose a risk of danger to public safety, as required by California law.

Joseph's attorney then filed a habeas petition in the California Court of Appeal, again arguing that the Board violated Joseph's due process rights "because there was not some

evidence in the record to support its finding that he poses a current unreasonable risk to public safety."  The appellate court summarily denied the petition on October 1, 2010.

Again proceeding through counsel, Joseph filed a habeas petition in the California Supreme Court.  He argued before that court that the Board's "unlawful practice of denying parole in 99.7% of initial parole hearings deprived Mr. Joseph of an individualized consideration for parole."  The petition was denied without comment on December 1, 2010.

Joseph timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court.  He subsequently retained counsel, who was appointed as attorney of record on February 25, 2011.

## II. GROUNDS/CLAIMS

Joseph asserts the following grounds for habeas relief: (1) "the Board's unlawful practice of denying parole in 99.7% of initial parole hearings deprived Mr. Joseph of an individualized consideration for parole"; (2) the Board violated Joseph's due process rights because there was not "some evidence" in the record to support its finding that Joseph posed a current unreasonable risk to public safety; and (3) the amendments made by California's Marsy's law[2] violates the ex post facto and due process clauses of the state and federal constitutions.

On June 7, 2011, the Magistrate Judge assigned to this case issued an Order & Findings and Recommendations recommending that claims 2 and 3 be dismissed from the Petition as barred by Supreme Court precedent and a pending federal class action.  Docket No. 5.  On April 26, 2011, the Findings and Recommendations were re-designated as an order dismissing claims 2 and 3 from the Petition.  Docket No. 15.  In light of these proceedings, the only claim presently

---

[2]        The California Victims' Bill of Rights Act of 2008, which amended California Penal Code § 3041.5.

before this Court is Joseph's first claim that "the Board's unlawful practice of denying parole in 99.7% of initial parole hearings deprived Mr. Joseph of an individualized consideration for parole."

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63; 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous'" (citation and internal quotation marks omitted)).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Williams*, 529 U.S. at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that a petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  *Edwards v.*

*Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  *Himes*, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

A.     Mootness

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings.  This means that, throughout the litigation, the petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.").  If an event occurs subsequent to the filing of a lawsuit which deprives a court of the ability to provide meaningful relief, the case becomes moot and is subject to dismissal.  *See United States v. Alder Creek Water Co.*, 823 F.2d 343, 345 (9th Cir. 1987) ("A case becomes moot when interim relief or events have deprived the

court of the ability to redress the party's injuries.").  Similarly, a claim for habeas relief becomes moot when the controversy between the parties is no longer alive because the party seeking relief has obtained the relief requested.  *See*, *e.g.*, *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (a claim is moot when the court no longer has power to grant the requested relief).

As previously noted, it appears that Joseph has been released from state incarceration and is now on supervised release.  Because Joseph has not completed the maximum sentence imposed of sixteen years to life, it appears that Joseph was granted parole and thus has already achieved the remedy he seeks; this Court can therefore no longer grant Joseph further relief on any claim contained in his Petition.  *See Carafas v. La Vallee*, 391 U.S. 234, 237-238 (1968) (noting in part that a habeas corpus petition becomes moot upon the petitioner being released from custody unless the petitioner has demonstrated an ongoing collateral consequence); *Picrin-Peron*, 930 F.2d at 776 (finding that a claim is moot when the court no longer has power to grant the requested relief); *see also Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973) (stating that damages are not available in a habeas corpus petition).  As a result, the present case has been rendered moot and must be dismissed.

B. Merits

Even assuming that Joseph's claim has not been mooted, Joseph still could not prevail on the merits of his claim that the Board demonstrated systematic bias and applied an anti-parole policy in his case in violation of due process.

The Due Process Clause includes a "basic requirement" of a "fair trial in a fair tribunal." *In re Murchison*, 349 U.S. 133, 136 (1955).  The Ninth Circuit has recognized that California inmates have a due process right to parole consideration by neutral decisionmakers.  *See*

7

*O'Bremski v. Maass*, 915 F.2d 418, 422 (9th Cir. 1990). "Because parole board officials perform

tasks that are functionally comparable to those performed by the judiciary, they owe the same

duty: 'to render impartial decisions in cases and controversies that excite strong feelings because

the litigant's liberty is at stake.'" *Id.* (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th

Cir. 1981)); *see also Schweiker v. McClure*, 456 U.S. 188, 195 (1982) ("[D]ue process demands

impartiality on the part of those who function in judicial or quasi-judicial capacities." (citations

omitted)).

"In attempting to make out a claim of unconstitutional bias, a plaintiff must 'overcome a

presumption of honesty and integrity' on the part of decision-makers" and "show that the

adjudicator 'has prejudged, or reasonably appears to have prejudged, an issue.'" *Stivers v.

Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975);

*Kenneally v. Lungren*, 967 F.2d 329, 333 (9th Cir. 1992).

In considering Joseph's claim in his state habeas petition that there was no evidence in

the record to support the Board's finding that Joseph posed a current unreasonable risk to public

safety, the superior court noted:

> First, the Board felt that the commitment offense weighed against suitability.
> (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1).)  The Board felt that the crime was
> dispassionate and calculated, based on a trivial motive, and done with a callous disregard
> for human suffering.  Considering that the murder took place during a heated exchange at
> an Acapulco's restaurant, the crime was actually not very dispassionate and calculated.
> In contrast, it was a passionate crime done with a lack of calculation.  "The reference in
> Board regulations to motives that are "very trivial in relationship to the offense" . . . must
> be materially less significant (or more "trivial") than those which conventionally drive
> people to commit the offense in question."  Here, the Board said the trivial motive was
> based on "insults as to [Joseph's] ethnic upbringing."  The murder was also related to a
> mutual exchange of indecent words.  These motives are not materially less significant
> than those which commonly drive people to murder.  The record does support, however,
> that the crime was done with a callous disregard for human suffering . . . .  Here, because

8

the victim was stabbed to death, the crime can be characterized as being done with an exceptionally callous disregard for human suffering.

In addition, "particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness." Here, [Joseph] was sentenced to 15 years to life with a 1 year enhancement for the murder he committed in November of 1996. As such, he has not yet served his base term and the aggravating circumstances of his commitment offense can still be relevant to his current dangerousness. Furthermore, there is other evidence of current dangerousness. The commitment offense weighs against suitability.

Second, the Board was concerned about [Joseph's] prior criminality. Prior to the commitment offense, [Joseph] was arrested/convicted for robbery, assault and battery, and receiving stolen property. As the Board noted, this criminal history includes violence and weapons. This factor weighs against suitability.

Third, the Board found that [Joseph's] psychological report supported a finding of current dangerousness. [Joseph] was rated an overall "Low to Medium" risk of violence in the free community. Although he scored in the "Low" range for psychopathy, having a better score than 92% of other offenders, the factors that withheld him from having an even better score were: Grandiose Sense of Self; Manipulation; Callousness; Poor Behavioral Controls; Impulsivity; and Failure to Accept Responsibility for Own Actions. Petitioner also scored in the "Medium" range of risk for violent recidivism. This score was not based on historical factors alone. In fact, in the more current dynamic domain of the risk assessment, [Joseph's] "lack of insight regarding the development of his criminal motivations and actions," has increased his likelihood for future violence. His risk of general recidivism was rated as "Medium" also, but would have been "Low" had [Joseph] been currently working. This factor weighs against suitability.

Fourth, the Board was concerned with [Joseph's] lack of insight. "'[L]ack of insight' is probative of unsuitability only to the extent that it is both (1) demonstrably shown by the record and (2) rationally indicative of the inmate's current dangerousness." Here, [Joseph's] lack of insight is demonstrably shown by the record because it was concluded to exist by the psychological evaluator. "[H]e shows some lack of insight regarding the development of his criminal motivations and actions . . ." In addition, it is rationally indicative of [Joseph's] current dangerousness because it increases his risk of violent recidivism according to the HCR-20 risk assessment method. This technique has "been cross-validated with various forensic populations, including United States males in correctional settings." [Joseph's] lack of insight weighs for unsuitability.

Fifth, the Board felt that [Joseph's] institutional misconduct was a factor that weighed for finding him unsuitable. [Joseph] had a 115 in 2004 for falsifying documents. As this is somewhat recent, this factor weighs against suitability.

The Board also considered various positive factors in determining whether [Joseph] was suitable for parole. The factors that weighed for finding [Joseph] suitable for parole were plentiful and included, in part: he had very strong parole plans; he had experience in AA/NA, and he knew the steps; he has done incredible things in prison; he

is a true success story; he received an AA degree and an AS degree; and it's rare for the Board to see people come in who have done as much as him and succeeded in so many ways. However, the Board concluded that [Joseph] would pose an unreasonable threat to public safety at this time and found him unsuitable for parole. (Pen. Code § 3041(b).)

The record therefore demonstrates that the Board properly considered the evidence at Joseph's hearing and made a thoughtful decision based on an individualized assessment of Joseph's circumstances. The only support Joseph gives for his assertion that the Board denied him an individualized assessment is the fact that the Board has denied parole in 99.7% of the initial parole determinations it has issued. But that lone statistic is insufficient to rebut the presumption of honesty and integrity afforded to the decisionmakers. *See Stivers*, 71 F.3d at 741. This is particularly true where the record indicates that Joseph was given a full and extensive parole hearing where he was allowed to address the Board and was given a prisoner evaluation report and comprehensive risk assessment prior to the Board's determination. *See Orozco v. Clark*, 705 F. Supp. 2d 1158, 1174-75 (C.D. Cal. 2010) (finding on similar record that petitioner failed to show due process violation based on Board's alleged no-parole policy); *Hardwick v. Clarke*, No. CIV S-06-0672, 2010 WL 1444575, at *14 (E.D. Cal. Apr. 12, 2010) (same); *Brazil v. Davison*, 639 F. Supp. 2d 1129, 1154-57 (C.D. Cal. 2009) (same). Accordingly, Joseph cannot prevail on this claim in any event.

## V. CONCLUSION AND ORDER

Joseph is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

      Dated: March 21, 2014.

                        /s/James K. Singleton, Jr.
                        JAMES K. SINGLETON, JR.
                        Senior United States District Judge